IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TEXARKANA DIVISION

| | | |
|---|---|---|
| WILLIE JEFFERSON | § | |
| v. | § | CIVIL ACTION NO. 5:13cv18 |
| D. ENDSLEY, ET AL. | § | |

MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND ENTERING FINAL JUDGMENT

The Plaintiff Willie Jefferson, proceeding *pro se*, filed this lawsuit under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971) complaining of alleged deprivations of his rights. This Court ordered that the case be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. As Defendants, Jefferson named officials at the Federal Correctional Institution at Texarkana including case manager Robert Smith, administrative remedy coordinator / camp administrator Michael Greene, Warden Michael Carvajal, senior officer specialist Darrell Endsley, and correctional counselor Michael Golden. Jefferson also named national inmate appeals administrator Harrell Watts, who is in Washington, D.C.

A. FACTS ALLEGED BY JEFFERSON

Jefferson states on April 18, 2012, he complained to Watts and the Bureau of Prisons South Central Regional Director of Golden's and Greene's refusal to provide him with grievance forms. After Endsley, Golden, Smith, Greene, and Carvajal learned of this on May 9, they entered into a racially motivated conspiracy to have Plaintiff, an African-American Muslim, transferred to a higher-security facility with "sexually dangerous persons and security threat groups."

1

Endsley told Jefferson on May 14, 2012, "since you want to keep writing D.C. and the Region, we are going to find a way to get rid of your smart black ass." The next day, Endsley had Jefferson placed in the Special Housing Unit; Jefferson claims this was for writing down staff names and possessing his legal property. A disciplinary hearing was held by Golden and Smith, who referred the incident report to the disciplinary hearing officer and recommended Jefferson be sanctioned, which he was; however, this case was later set aside. Jefferson complains he also received another disciplinary case he alleges was false.

On June 3, 2012, Greene and Smith submitted Jefferson for a "greater security management variable" and a "greater security" transfer from a minimum security facility to the next level higher, a "low" security facility, containing sexually dangerous persons and security threat groups. On June 21, Jefferson made Watts aware of the conspiracy against him, but on July 2, the Designation and Sentence Computation Center placed a 24-month greater security management variable on Jefferson and redesignated him from the minimum security unit at Texarkana to the low security unit at La Tuna, where he arrived on July 19, 2012.

Jefferson asserted he was the victim of retaliation and a racially motivated conspiracy. The Defendants sought summary judgment arguing Jefferson failed to exhaust his administrative remedies on some of his claims; he received the process he was due in the disciplinary cases; he failed to set out a viable conspiracy claim; he cannot obtain compensatory damages because he did not show a physical injury; and, the Court lacks jurisdiction over the Defendant Harrell Watts. After review of the pleadings, the Magistrate Judge recommended the motion for summary judgment be granted.

B. OBJECTIONS

In his objections, Jefferson asserts the Magistrate Judge erred in concluding he had not exhausted all of his administrative remedies. Jefferson argues as long as the facts are in a grievance, prisoners need not specifically grieve claims of discrimination, conspiracy or retaliation. He cites cases holding that where a grievance policy required only facts, the failure to assert racial

2

discrimination was not a failure to exhaust and conspiracy is a legal theory which need not be asserted in a grievance to exhaust administrative remedies. Jefferson states the administrative remedies which he filed meet all of the Bureau of Prison's requirements to have exhausted his administrative remedies.

The Fifth Circuit has stated the exhaustion requirement must be interpreted in light of its purposes, including giving prison officials time and opportunity to address complaints internally. Grievances are considered sufficient where they give prison officials "a fair opportunity to address the problem that will later form the basis of the lawsuit." Johnson v. Johnson, 385 F.3d 503, 516-17 (5th Cir. 2004). The Magistrate Judge correctly concluded none of Jefferson's grievances gave any indication he believed he was the victim of racial or religious discrimination, nor did these grievances set out any facts from which such a conclusion could be drawn. Prison officials could not be expected to address or even consider a problem of racial or religious discrimination based on Jefferson's grievances.

Even if prisoners are not expected to set out legal theories in their grievances, they nonetheless must provide facts sufficient for prison officials to address the problem which will form the basis of the lawsuit. Jefferson failed to do so. *See* Zebrowski v. U.S. Federal Bureau of Prisons, 558 F.App'x 355 (5th Cir., February 27, 2014) (vague references to retaliation in administrative appeals which did not explain the retaliation claim or furnish most of the facts underlying this claim did not give prison officials a fair opportunity to address the problem). This objection is without merit.

Next, Jefferson argues he furnished a chronology of events from which retaliation could plausibly be inferred. He points to Endsley's statement, but he did not mention this statement in the grievances he filed and thus did not give the prison officials any opportunity to address it.

The Magistrate Judge stated the mere temporal proximity - in other words, the closeness in time - between May 9, the date the Defendants learned of his filings, and the disciplinary cases on May 15 and 16, when he received disciplinary cases, did not itself amount to direct evidence of

3

retaliation or a chronology from which retaliation could plausibly be inferred. The Magistrate Judge cited Reese v. Skinner, 322 F.App'x 381, 2009 WL 1066997 (5th Cir. 2009), in which the Fifth Circuit held an allegation that harassment of the plaintiff intensified after he started filing grievances was insufficient to show retaliation.

Aside from Endsley's statement, on which administrative remedies were not exhausted, Jefferson argues incident report no. 2304460 alleges he was seen writing down staff names and the charging officer noticed a huge stack of legal work. This incident report states a massive search was being undertaken of the entire camp, with all inmates required to pack their property and go to the TV room, where staff were assigned to go through this property. Jefferson entered the TV room around 1 p.m. and was seen writing down staff names in a manner in which to try to intimidate staff and influence other inmates. When the staff began searching Jefferson's property, Endsley states he noticed a huge stack of legal work which appeared to be three times the size allowed in inmate housing area, although Jefferson had been issued a legal locker. When Endsley questioned him, Jefferson stated in a loud tone "the property was in his quarters because he chooses to keep it there and he will continue to do so." (Incident Report, Doc. 68-1, p. 29). Endsley stated Jefferson became loud and aggressive while waving his hands and arms.

Although Jefferson points to the incident report as proof of retaliation, this report does not bolster his claim that but for the alleged retaliatory motive, the complained-of incidents would not have occurred. Jefferson's objection on this point is without merit. *See also* Lucien v. Peters, 69 F.3d 539, 1995 WL 623831 (7th Cir., October 23, 1995) (warden's telling inmate he knew the inmate was a frequent litigator and he, the warden, would not put up with any litigation while the inmate was at his unit did not support a retaliation claim over an incident occurring several months later).

Third, Jefferson objects to the Magistrate Judge's conclusion that his disciplinary case was overturned because he did not receive adequate notice, not because it was false. He states "the evidence in the case clearly shows" he cannot receive a disciplinary case for possessing another

4

inmate's legal materials inside the law library in the camp, and he cannot be penalized for a direct order that was never given.

The prison records show this disciplinary case was informally resolved by the Bureau of Prisons and expunged from Jefferson's record. While Jefferson argues in his affidavit the case was false, the South Central Regional Office stated in a response to Jefferson's grievance that the incident report supported the charge of possessing anything unauthorized. However, the Regional Office remanded the case for reconsideration of the charge of refusing an order because the incident report did not give Jefferson adequate notice. Jefferson points to no evidence showing the disciplinary case was overturned by prison officials because it was false; the response to his grievance explained why the case was overturned. Jefferson's speculation that the reason may have been different from the one he was given is not sufficient to show the Magistrate Judge erred. His objection on this point is without merit.

Jefferson asserts the actions of the Defendants in reclassifying him to a higher security level constitutes a "retaliatory adverse act." While the reclassification and transfer of Jefferson may be more than a *de minimis* act for purposes of a retaliation claim, Jefferson has failed to satisfy the other requirements for such a claim. *See* Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997). The Magistrate Judge's determination that Jefferson has no liberty interest in his custodial classification or in being confined in a camp facility as opposed to a low security facility was correct. Jefferson's objections on this point are without merit.

Jefferson contends the Magistrate Judge erred in determining he failed to exhaust his administrative remedies on his conspiracy claim, asserting he is not required to present legal theories in his grievances. The Magistrate Judge correctly determined Jefferson did not state facts in his grievance sufficient to allow prison officials to suspect, much less investigate, a conspiracy against him; thus, he did not fairly present this claim in his grievances and it is unexhausted.

Jefferson also argues the Magistrate Judge erred in concluding the conspiracy claim was barred by the intra-corporate conspiracy doctrine because the Defendants were acting for their own

5

personal purposes and not in the interests of the Bureau of Prisons. This is simply a restatement of a claim he made in his original complaint. He does not allege facts plausibly suggesting each defendant possessed an independent personal purpose. *See* Richard v. Fischer, 38 F.Supp.2d 340, 354 (W.D.N.Y. 2014) (for purposes of the intra-corporate conspiracy doctrine, prison employees were acting in the scope of their employment in assigning prisoners to work duty, despite claims of retaliation and racial and religious discrimination in the giving of work assignments). Jefferson's objection on this point is without merit.

Finally, Jefferson maintains he has overcome the defense of qualified immunity because the law was clearly established that transferring an inmate to a more violent prison was sufficient to support a retaliation claim. To overcome qualified immunity, a plaintiff must show the official's conduct violated a constitutional or statutory right and the conduct was objectively unreasonable in light of clearly established law. Brumfield v. Hollins, 551 F.3d 322, 326 (5th Cir. 2008). While a transfer to a more dangerous prison is not a *de minimis* act for purposes of a retaliation claim, *see* Morris v. Powell, 449 F.3d 682, 687 (5th Cir. 2006), this is only one of the elements of a retaliation claim, and Jefferson has failed to meet all of the elements. He has the burden of overcoming the defense of qualified immunity, and he has failed to do so. Brumfield, 551 F.3d at 326. Jefferson's objections are without merit.

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which the Jefferson objected. *See* 28 U.S.C. §636(b)(1) (district judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.") Upon such *de novo* review, the Court has determined that the Report of the Magistrate Judge is correct and the Jefferson's objections are without merit. It is accordingly

ORDERED that the Jefferson's objections are overruled and the Report of the Magistrate Judge (docket no. 78) is ADOPTED as the opinion of the District Court. It is further

ORDERED that the Defendants' motion to dismiss or for summary judgment (docket no. 68) is GRANTED and the above-styled civil action is DISMISSED with prejudice. It is further

ORDERED that any and all motions which may be pending in this action are hereby DENIED.

**SIGNED this 24th day of September, 2015.**

                                                ROBERT W. SCHROEDER III
                                                UNITED STATES DISTRICT JUDGE